JOHN ASHTON *vs.* THE PRESIDENT, DIRECTORS AND COMPANY
OF THE ATLANTIC BANK.

A bill in equity to compel the delivery to a trustee of trust property pledged by his deceased
predecessor as security for money lent to him for his private use, must allege that the
lender knew that the money was lent for such private use, and that the property which
was pledged was trust property.

In such bill, it is not necessary to join as defendants the *cestuis que trust*, or the widow or
legal or personal representatives of the former trustee, or the sureties on his bond.

If a trustee appointed under a will, with power to sell real estate and invest the proceeds
according to his discretion, and to use such portion of the trust property as might be
needful for the purpose of finishing a dwelling-house which was in process of construction
when the will was made, has sold a portion of the real estate and taken a note therefor,
payable to himself as trustee under the will, and afterwards has borrowed money for his
own use, and pledged the note as security therefor, to one who had no knowledge of any
facts relating to the trust except what appeared upon the face of the note, the form of
the note alone, under the circumstances, does not afford a sufficient presumption of
knowledge that the pledge was made in violation of the duty of the trustee to authorize
his successor to maintain a bill in equity to compel its delivery to him.

BILL IN EQUITY by the trustee under the will* of George
Treadwell, which was executed in October 1852, and proved
in March 1853, seeking to obtain an order for the delivery to

---

* The material portions of the will, following the appointment of Lamb, the
original trustee, and devising to him the residue of the testator's real and personal
estate, after certain specific legacies, are as follows :

"Fourth. I hereby empower, authorize and request my said trustee to sell,
dispose of and convey the real estate whereof I may die seised and possessed, at
such time or times, and in such parcels or lots, as he may deem proper; the net
proceeds to be invested by him, and held subject to and under the trust and
terms set forth in the preceding article.

"I also request, empower and authorize my said trustee to finish and put
into tenantable order the dwelling-house in said West Roxbury, in the building
of which I am now engaged ; and to use and employ such portion of my per-
sonal and real estate as may be needful for that purpose.

"Fifth. I authorize and empower my said trustee to invest such personal
property as I may be possessed of at the time of my decease, and the proceeds
of all real estate which he may sell, in loans on mortgage, the funded debt of
the United States or any of the particular states, in bank stock or other stocks,
or in such other way and manner as my said trustee shall deem safe and judicious;
to have regard rather to the safety of the investment than to the amount of the
income to be derived therefrom."

him of certain trust property pledged by a former trustee to the defendants as collateral security for money lent by them to him, on his private account.

The bill set forth that the former trustee, Reuben A. Lamb, held as the avails of the sale of certain land which was by the will devised in trust, two notes of John J. Low, amounting together to $3000, payable to him as trustee under the will of George Treadwell, and secured by a transfer of five shares of the capital stock of the Columbian Manufacturing Company to him as trustee; that Lamb in October 1858, for his own purposes, obtained from the defendants a loan of $3000, giving therefor his individual note, and delivering to them as security the notes of Low, and the certificate of shares; and that the defendants were seeking to avail themselves of these securities, which rightfully should come to the plaintiff; and prayed for relief in various forms.

The defendants demurred to the bill, assigning as causes, amongst others, that the *cestuis que trust* under the will, and the widow of Lamb, and his legal and personal representatives, and the sureties on his bond as trustee, were not made parties to the bill; and that the bill did not state a sufficient case to entitle the plaintiff to relief in equity.

The argument and decision upon the demurrer were in November 1860.

*W. R. P. Washburn,* for the defendants.

*W. S. Leland,* for the plaintiff.

DEWEY, J.    The demurrer to this bill must be sustained. Although the bill sets forth that Lamb, in his individual capacity and for his own purposes, obtained from the Atlantic Bank a loan of $3000, and gave his individual note therefor payable in four months, and placed in the hands of the said bank, for the purpose of securing the payment thereof, certain notes of one J. J. Low, secured by a transfer of five shares of the capital stock of the Columbian Manufacturing Company, the said notes of Low being the proceeds of certain real estate held by the said Lamb under the trust created by the will of George Treadwell, yet the bill wholly omits to allege that the

bank knew that the money so obtained of them was for his individual use and private purposes only, or the further fact that the bank knew, or had good reason to know, at the time of the said negotiation with Lamb and advancing the said money and taking the security therefor, that the notes of said Low were trust property in the hands of said Lamb, and that the same were, if accepted as security for the said loan of $3000, transferred in violation of his duties as trustee.

By the terms of the will, which is made a part of the bill, the said Lamb as trustee had full power to dispose of the real estate of the testator, as he might deem proper, the net proceeds to be invested by him. Such proceeds of real estate were to be invested in loans on mortgage, in bank stock or other stocks, or in such other way and manner as he should deem safe and judicious.

By a further provision in the will, the trustee was authorized to employ the proceeds of the real or personal estate in payment of expenditures for putting in repair a dwelling-house belonging to the estate of the deceased.

The notes thus pledged to the bank were the proceeds of real estate sold by the trustee. These notes were therefore fully at the disposal of the trustee for various legitimate purposes. They might be sold or discounted to raise money in discharge of the duties devolving upon the trustee, or for the purpose of making a new and different investment. A very broad and general power was by the will vested in the trustee in this respect.

The mere fact that it was apparent upon the face of the notes and the certificate of the five shares of the Columbian Manufacturing Company that the same were a part of the trust property held by Lamb as trustee under the will of George Treadwell would not render the sale, pledge or other transfer of them necessarily illegal or fraudulent, as respects the purchaser or receiver of them.

It was also objected that certain necessary parties were not joined as defendants in this bill. 1. As to the omission to join in the bill the *cestuis que trust*, this was not necessary in the

present case. The trustee has no adverse claims against the *cestuis que trust*, the object of this bill being more effectually to secure their interest. The trustee fully represents them, and has full power to enforce this claim. The case does not fall within the general rule in equity that in suits by or against trustees the *cestuis que trust* must be made parties. *Shaw* v. *Norfolk County Railroad*, 5 Gray, 169. 2. Nor are the legal representatives of Reuben A. Lamb, deceased, or the sureties upon his bond to the judge of probate, required to be made parties.                                      *Demurrer sustained.*

The bill was thereupon amended as stated in the following opinion, and upon a hearing, before *Hoar*, J., it appeared that Lamb procured the discount by the defendants of his own note for $3000, and transferred to them as security therefor the notes of Low and certificate of shares; that this discount was procured for his own benefit, and the proceeds thereof were appropriated wholly to his own use; that the notes and stock pledged by Lamb as collateral were the proceeds of the sale of real estate which it was his duty to invest and hold for the purposes of the trust; and that the defendants had no notice or knowledge of any facts relating to the trust except what appeared upon the face of the notes and certificate, but had whatever notice is by law to be presumed from the tenor thereof. Upon these facts, the case was reserved for the determination of the whole court.

*Leland*, for the plaintiff.

*Washburn*, for the defendants.

DEWEY, J. This case has at a former period been heard before the court on a demurrer taken to the original bill, and the demurrer was sustained upon the ground that it did not sufficiently allege knowledge on the part of the defendants of any fraudulent or illegal misappropriation of the notes and shares in the stock of the manufacturing company, of which the plaintiff seeks to obtain the possession. The amended bill has fully supplied this defect, and alleges that, " at the time they made said loan to Lamb, the defendants knew, or had reason to know that the money lent to Lamb was for his own private purposes

only, and that said notes and shares were part of the trust property of the estate of George Treadwell, and that they were transferred by the trustee to the defendants, in violation of his duties as trustee.

These allegations are fully denied by the defendants in their answer. The finding upon the evidence is, that the respondents had no notice or knowledge of any facts relating to the trust except what appeared upon the face of notes and certificate of stock taken by them as collateral security, and that the respondents had whatever notice is by law to be presumed from the tenor of said notes and certificate.

It is not denied that the loan was made, and that the money was subsequently used by Lamb for his private purposes. The question is therefore reduced to this, whether the defendants had from the face of the notes knowledge or reason to know that these trust funds were fraudulently applied to private purposes by Lamb, at the time they made the loan and advanced to him the full amount thereof. We refer to the notes especially, inasmuch as there is nothing on the face of the certificate of the shares to show they were trust funds, except they are assigned " as collateral security for two notes signed by John J. Low, dated June 13, 1854, for $2000 each, payable in five years." The question arises therefore upon the form and recital of the notes in the use of these words, " I promise to pay to Reuben A. Lamb, as he is the trustee under the will of George Treadwell, deceased, or order, the sum of $2000," &c.

It will be seen that the decision of the present case turns upon the simple question of the liabilities of the defendants, arising from the exhibition of such a note to them for discount, or as collateral to a discount to be made.

We are aware of the great vigilance with which courts of equity watch over trust funds, and that all who fraudulently aid in their misappropriation to the injury of the *cestuis que trust,* by becoming purchasers or holders of such securities, do it at their peril. But while the courts are thus vigilant in protecting trust property, they are alike bound to protect those who in good faith have received negotiable paper, negotiated before

19*

maturity, and indorsed by the payee, and have upon such negotiable paper thus transferred to them advanced the whole value thereof, in the ordinary course of business.

We are not prepared to say, that the mere fact of the form in which these notes are drawn sustains the burden devolving upon the plaintiff of showing knowledge on the part of the defendants, when advancing money to Lamb thereon and taking the transfer of the same, that Lamb was acting in violation of his duties as trustee. It might be incident to the duties of such trustee to discount trust funds for the purpose of making a permanent investment. The fact that these were notes of an individual becoming due in a few months would obviously present a different case from that of a trustee offering for sale government stocks payable at some distant day. The purchaser might also reasonably assume that the money was wanted to discharge liabilities incurred under the will. Such a case was well warranted by the will creating the trust, and by the very broad and unlimited authority to select for investment of the trust funds such stocks as he should deem safe and judicious.

Upon recurring to the facts, it appears that the original application was for a loan on these notes; that this was declined on account of the length of time they had to run; that it was to remove that objection that Lamb gave his own note, payable in four months; and that the amount of the loan was the amount of the notes first offered.

The present case will be found to differ from the reported cases cited on behalf of the plaintiff in its facts. Indeed each case must depend upon its own peculiar facts. In one class of cases cited, and the more numerous class, the trust property was taken as security for a preëxisting debt. Here there was no antecedent debt, due to the defendants from Lamb. The money was parted with at the time the notes were transferred. Another class presents this feature, that although the trust securities were passed at the time of making a contract for a loan, yet before actually parting with the money the lender came to the knowledge that the borrower was using the securities improperly, and in so doing was committing a breach of trust. Here

the original agreement and the paying of the money rest upon the same state of facts as to knowledge of misuse of the trust funds.

In other cases, the court have held that if the nature of the transaction affords intrinsic evidence to the purchaser that the trustee is committing a breach of trust, then the purchaser takes the property charged with the trust. It is under this class that the plaintiff must show the present case to fall, to maintain his bill. But that intrinsic evidence is wanting. The facts apparent on the face of the notes are not sufficient to establish the position that the purchaser knew the trustee was about to commit a breach of trust. This was virtually decided on the demurrer to the original bill, as that bill set forth these notes, and claimed to charge the defendants with the knowledge of a breach of trust by the trustee from that fact.

Upon a consideration of the case, as now presented, the court are of opinion that the plaintiff has not sustained his bill, and that the same must be dismissed. *Bill dismissed.*